May it please the court, my name is Shanlyn Park. I'm an attorney with the Federal Public Defender's Office and I represent Kimo Michael Sims, the defendant appellant in this case. Just a second, I need counsel here. Sorry, Your Honor. You can take a place at the table. I had to make a mess. Sorry. Thank you. A little over a year ago this court decided the issue that I'm asking you to decide now. In United States v. Aquino, this court cautioned that when a district court was trying to craft a condition regarding using spice or not using spice when you're on supervision, it had to comply with the precedent of not being vague. Here we have the exact same issue that we have in Aquino. It's the same issue but it's definitely different language. It is a what is exactly the same is that the district court applied this mimicking effect standard. Right, but it's that language in this special condition is used to define a much more precise term, right? It is. It does limit it to cannabis but again that doesn't solve it because the effects of the cannabis plant are very broad. Okay, let me just make sure I got the language in mind right. As I understand it, the condition tells your client you can't ingest whatever, whatever, whatever and the key term being is it synthetic and how do you pronounce that word? Cannabinoid. Okay, so that that's the lone substance that is the subject of the condition, right? Correct. It's not a controlled substance. Right, so why that seems very specific and it doesn't seem terribly vague in and of itself. So if that's the substance that he's prohibited from using, why then does the kind of explanatory definition that's just given to illustrate what we're talking about, why does that render the term vague? It still deals with the mimicking effect standard that this court struck down. It uses that same terminology even though you're kind of limiting it to this synthetic cannabinoid and the effects of the cannabis plant are just as broad as the effects of any controlled substance. I know, I know, but what we said in Aquino was it? Is that the name of it? Is that because it was just any controlled substance, right, that that and they gave that silly hypothetical about going to Starbucks and ordered some crazy drink, but that can't happen here because the lone substance that's that's the subject of the condition is already pretty narrow in and of itself, right? There are numerous effects of cannabis on an individual and what mimics one or just the terminology mimics or its effect on an individual can mean different things for different people and that's why that mimicking effect standard is vague in and of itself, but cannabis alone has at least 14 possible side effects that we cited to in our brief. Help me with this. Let's just say that the mimic mimics the effects language was not even in here, right? All the court said to your client was you cannot use and just whatever synthetic cannabinoids, you're much better pronouncing that word. If it just said that, are you saying that that is vague? I don't think that that would save it because we don't know what synthetic cannabinoids is defined as. There's so many different definitions for what that could be. There is the analog statutes that that define it and use that term and we don't know what it all captures. So I think that's a problem in and of itself is how that term is used. They throw around the term synthetic cannabinoids, synthetic marijuana, K2 spice. All of those terms are synonymous with each other. So I think just limiting it and narrowing it to synthetic cannabinoid doesn't save this condition given that it doesn't just even limit the effects to the THC which is the controlled substance portion of a cannabinoid. It limits it, it encompasses all the effects of a cannabinoid. Your client, what we want to do is keep your client from going to jail again. Correct. Right. And so we want to get something through a common, from a common sense point of view, not analytical, not out of books, not out of experts, common sense that will keep him on the straight, no he can't go this way or that way. Now it seems to me that this is getting pretty analytical for an ordinarily common sense defendant to go into books to decide this. What you're saying is, if I understand you correctly, you can't use any of this. We can't protect him from going back into jail again. What do you say is acceptable? What is there about this sentence that you would change if you were the judge to make it acceptable so we can have this person on the street and stay clean? I think, Your Honor, what the district court was concerned about and I think what this court is rightly concerned about is being able to have a discussion with a defendant about what they can and cannot do on supervision. This condition doesn't prohibit that or require it, I mean, whether or not you have a condition like this. You're back to your argument. That was my question. What, I'm trying to find out what he did wrong or even if there's another way of doing it. This court gave clear instructions of how to handle that situation and it said one of the things that is already in effect is that you shall comply with all federal, state, and local laws. The Hawaii Analog Statute is a pretty inclusive statute. They amend it annually and they've amended it every year since 2010 and that alone would allow the conversation to happen and would be sufficient in order to have a conversation that the district court had. But I think the government has explained why that is problematic in and of itself. We did offer some other language in Aquino, which doesn't strike me as any better actually than what was given here in terms of, as Judge Wallace was saying, in terms of what a common sense understanding would mean for your client. You know, Your Honor, I don't even know if a defendant would understand the language as it's written here, given that there's so many terms that are being used that, number one, we can't even pronounce, number two, we don't even really know what they mean. So I don't know if this condition... You don't really, I mean, your client, you don't think he knows what the district court is talking about? But we're not looking at, we have to look at the language of the condition as it's written and what an overzealous probation officer could interpret it. I don't think that's the standard, is it? It is a standard that was applied in Aquino that... We don't just assume the worst about our probation officers, right? I mean, and ultimately the district court is the one that's going to be called upon to enforce this. So I don't think that's the standard. I don't think we look at a definition and say, if some wild-eyed probation officer got a hold of this, what crazy damage could they do? I don't think that's the test. I think that is what Aquino does. No, I think it's the vagueness test that the Constitution establishes. It's not pegged to an overzealous probation officer. It's pegged to a reasonable person in your client's shoes. And what would a regular person understand? And could they understand what this is getting at? And it seems to me that your client could if he wanted to. I mean, I guess if he wanted to pretend that he was confused, he could. But with the mimicking effects standard, Your Honor, it captures so many more things than what... It encaptures both the negative and positive effects of... Did you answer Judge Wallace's question? What language would have been acceptable? Your Honor, I respectfully submit that it is not my position as defense counsel to fashion conditions. Oh, come on, counsel. In other words, there's no such language that you would ever agree would be so keep him in jail until he serves a sentence. I think that you shall not violate any federal, state, or local laws would capture a violation should a defendant ingest synthetic cannabinoid as defined under those analogs. I think that would be a sufficient condition. Don't you think then the defender would say the language was too vague? Didn't tell him what he couldn't do? Didn't tell him he couldn't use synthetic? Your Honor, we don't go over every single possible law a defendant could violate when we talk about you shall not violate federal, state, or local laws. The probation officer then doesn't go through the laundry list of all the laws that a defendant should know. You know, I'm so glad you told me that. I never would have known. Your Honor, we do have something... Surely you know, we know that you don't go through every law. How can you? You don't even know which laws? But you don't need a condition like this... I'll let you go ahead with your argument. You don't need a condition like this, Your Honor, to have that discussion. And that was the whole purpose the district court wanted to do in crafting... I gather that what he was trying to do, and this is just a third of the court, I gather what he was trying to do was make sure the client understood what he could and could not do. And as I understand your argument, you're saying to us he was too specific. Well, when you use the mimicking effect standard, which is exactly what was used in Aquino, even though he tries to narrow it to cannabis, it doesn't solve the problem of vagueness. I understand your argument. Okay, let's hear from the government. I could ask a question. I don't read Aquino the same way you do, that it was prohibiting mimicking. The condition was just too over-inclusive. But what we're trying to do is get something that's logical. And they say it reaches only synthetic cannabinoids and mimics the effects of marijuana and then refers to, often referred to, K2, spice, etc. Doesn't that limit the thinking of the defendant to the specific thing we're trying to... If we just say obey all the laws, then there's a good chance you're going to try and smoke marijuana again. So we provide some process that lets him know specifically what we expect of him. And if we continue to send them out without more definition, we're going to get them back in jail, which is not the process. We're trying to keep them out of jail. So I have some difficulty with your argument that this isn't a valid process. I see it different from Aquino. What modifications should the district judge have made? Should he just have erased all of that and not talked about marijuana and marijuana substitutes? I think the problem is this mimicking effects standards, because it's a very broad standard and it encompasses many different effects that could happen. And it also encompasses the structural argument that we were making. Well, in Aquino, we didn't set a standard. We said it was too vague. I understand, but you did accept the argument that the condition would capture, because of the language that was used, that it would capture things like chocolate, coffee, tea. The same problem exists here. With that same type of language, I think you still capture those same issues. Well, when he turns it into often referred to as synthetic marijuana, K2, spice, hasn't he defined it? Hasn't he brought it down to something the defendant should understand? I don't know what the word spice means. That term, K2, spice, synthetic marijuana, is used interchangeably. It's synonymous with each other. That doesn't help to define it any better. Well, K2, that has words. Synthetic marijuana, that has words that he can understand. But we don't know what those words mean. I mean, the DEA has used those terms synonymously with each other in the things that they have cited, too. They define synthetic cannabinoid differently than the district court defines synthetic cannabinoid. So I think that's where the problem is. Thank you, Your Honor. Thank you. Let's hear from the government. Aloha. Good morning. My name is Chris Allen Komoa-Thomas, Assistant U.S. Attorney for the United States. Judge Wofford, you pointed out the main distinction in this case. In a keynote, which the government agrees with, the special condition in that case was overbroad. That condition stated that defendant could not knowingly use or possess any substance, controlled or not controlled, that you believe is intended to mimic the effects of any controlled substance. Now, the major distinction in this case is the controlled substance was qualified and it was defined. And from the over-inclusive special condition that we had in Okino, which was vague, we have this condition in this case, which is very under-inclusive, very qualified, and defined. And the government wants to point out that the standard that's set in Okino is that the special condition not be vague. The holding in that case is not that the mimic of effects, if you use that language, then the whole special condition is thrown out. It doesn't hold that. It also does not hold that the standard is what an overzealous probation officer, how they would define the special condition. That's not the standard either. The standard is what a person of common intelligence would interpret that special condition. And as Judge Wallace, as you pointed out, the judge went to great lengths to ensure that the defendant understood it. And his intention was not for prosecution, not to ensure that the defendant could be revoked on supervisory lease. That was not his intention at all. His intention was for the purposes of supervisory lease, for deterrence, for rehabilitation of the defendant. And he wanted to ensure that the defendant could understand the condition that he was setting. This person, this defendant in this case, obviously had a problem with marijuana. That's what he was arrested for. He was high on marijuana when he was arrested, and he was also selling marijuana so that he could obtain more marijuana. So within the purported goals of supervisory lease, the district court went to great lengths to define it in terms that this defendant could understand. I think the question that was raised by counsel, which I'd like to have your response to, is that within this restriction, if he ate candy or drank coffee, he may get the same effects, and therefore it's overbroad. What's your response to that argument? Well, Your Honor, when we addressed that in the brief, the fact that the court didn't just simply state synthetic marijuana or cannabinoids, it went to other lengths to define other similar chemicals. K2, Spice, these are brands. These are types of synthetic cannabinoids. Now, the reason why that's in favor of the government is because the Controlled Substance Analog Act, it prohibits all types of analogs. Controlled substance analogs that attempt to mimic heroin, attempt to mimic MDMA, amphetamine, methamphetamine, the list goes on. But the judge in this case attempted to limit it purely to cannabis, synthetic marijuana, K2, Spice, terms that a defendant, such as the defendant in this case, would understand. Because if we did not have this special condition, and we just had a general condition, do not violate any state, federal, then this K2, Spice, and other substances that are sold under that brand, you can buy them off at any head shop on King Street, two blocks from here. But when you have a special condition listed, which says specifically cannabis or things like it, then the defendant knows, okay, I understand, I'll stay away from it. And that'll be the discussion that this special condition will evoke when that probation officer and that defendant sits down and talks about what they can and what they cannot do. And Judge Wallace, you also pointed out that, maybe because you're a district court judge, that when you have a petition for causes of action in a revocation of supervisory lease, the judge who fashioned the special condition, that petition goes before that same judge. That judge will determine whether the probation officer correctly interpreted the provision that he set forth. So that's the guard against some overzealous probation officer, which is not the standard, but a comment of personal intelligence, but that mechanism guards against the very minimal, small percentage of cases where that might happen. And to further answer your question, when the judge gave examples of the synthetic marijuana relating to cannabis, like K2 and Spice, that prevents the interpretation of the defendant not being able to use, as a result of the special condition, Red Bull, nonfat chai tea latte, coffee, chocolate. I mean, that dispenses with that argument, because it doesn't make sense. Because this is very specific, it's very defined, and according to the law in Aquino, it's appropriately tailored. If there are any other questions, that's the government's argument. Thank you. If you'd like to respond, all right, let's give defense counsel a minute for rebuttal. Your Honor, when this court struck down the Aquino's condition, it did so because the mimicking effects standard was just simply too vague. This court reaffirmed that it has to review a condition as it's written. You don't look at what the district court intended to do, and it doesn't matter what the district court intended to do. We look at how that condition could be applied. So when the government focuses on, oh, this is what the district court intended to do, and this is how this district court would apply it, you don't know whether the defendant is going to be in front of this district judge for a revocation if he were to change jurisdictions. So that argument doesn't have any merit. This court reaffirmed in Aquino that it's too vague if it allows people of common intelligence to differ as to its application, leaving them guessing. This court accepted the analysis that we made that when you do a mimicking effect that encompasses everything, it's simply too broad. The district court and the government kind of dismissed that, saying, well, that's ludicrous. That's not what this court held in Aquino, and this court is now bound by Aquino's precedent. Thank you, Your Honor. Thank you very much. The case just argued will stand submitted.
judges: Wallace, Farris, Watford